UNITED STATES of America,
Plaintiff-Appellant,

v.

John E. HATFIELD, Defendant-Appellee.

No. 78–5416.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 22, 1979.

Decided June 4, 1979.

John H. Cary, U. S. Atty., J. Michael Haynes, Jr., Asst. U. S. Atty., Knoxville, Tenn., for plaintiff-appellant.

Farrell A. Levy, Knoxville, Tenn. (Court-appointed), for defendant-appellee.

Before CELEBREZZE, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal by the Government from a suppression order entered by the United States District Court for the Eastern District of Tennessee. 461 F.Supp. 57 (E.D.Tenn.1978). The order prohibits the Government from introducing into evidence at defendant's trial certain firearm transaction records seized during a search of defendant's premises. The search was conducted pursuant to a search warrant issued by a United States Magistrate authorizing a search for and seizure of firearm transaction records and illegal firearms. The district court found that the affidavit in support of the search warrant was insufficient to support a finding of probable cause to search for illegal firearms but sufficient as to the transaction records. The district court ruled that the warrant was constitutionally overbroad and, notwithstanding the sufficiency of the affidavit on the existence of probable cause to search for the transaction records, the records were suppressed.

The principal issue presented for review is whether the district court correctly concluded that the affidavit in support of the warrant was insufficient to establish probable cause to search defendant's premises for illegal firearms. For the reasons stated below, we find the affidavit was sufficient to support a finding of probable cause as to both the firearms and the transaction records. We accordingly reverse.

In July 1978 a federal grand jury indicted the defendant-appellee John E. Hatfield on two counts of selling firearms without recording the name, age, and place of residence of the purchasers of the firearms, in violation of 18 U.S.C. §§ 922(b)(5) and 924(a). Hatfield, being a licensed federal firearms dealer, was required to keep such records by 18 U.S.C. § 923.

The affidavit in support of the search warrant was submitted by ATF Special

Agent R. Grant McGarity.[1] Relying upon the information in the affidavit the United States Magistrate issued a search warrant on September 21, 1977, authorizing federal agents to search Hatfield's Swap Shop and the adjoining residence for "records of receipt and disposition of firearms, Firearm Transaction Records (ATF Form 4473) and firearms which are used in or intended to be used in violation" of various federal laws and regulations. On the evening of September 21, 1977, the warrant was executed by federal agents. The agents seized sixty-six transaction records and one record book. No illegal firearms were found on the premises.

The district court granted the defendant's motion to suppress all evidence seized during the search. Though the affidavit was sufficient to establish probable cause to search for the transaction records, the court ruled that the affidavit did not support the magistrate's finding that probable cause existed to search defendant's premises for illegal firearms.[2] Therefore, the district court ruled that since a portion of the warrant was not supported by probable cause, the entire search was constitutionally overbroad and all evidence seized during the search must be suppressed.

■ On appeal the Government argues the district court erroneously found that the affidavit was insufficient to support a finding of probable cause to search defendant's premises for illegal weapons. The Government submits that when the affidavit is interpreted in a common sense and realistic fashion, the affidavit relates sufficient articulable facts to support a finding of probable cause to search defendant's premises, not only for transaction records, but also for illegal firearms. We agree.

In *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the Supreme Court ruled that

1. Agent McGarity's affidavit is as follows:

I, R. Grant McGarity, and a Special Agent with the Bureau of Alcohol, Tobacco and Firearms and have been employed in this capacity for over 6 years. In the scope of my employment, I enforce the Gun Control Act of 1968.

Files located at the Bureau of Alcohol, Tobacco and Firearms office, Knoxville, Tennessee, reflect that a Federal Firearms Dealer's License is issued to John E. & Sharon S. Hatfield, 419 Spring Circle, LaFollette, Tennessee 37766. The record copy indicates that the license is numbered 1–62–007–01–K7–12171 and will expire on October 29, 1977 unless renewed.

In early 1977, I received information from a reliable source that John Hatfield was selling firearms from a Caryville, Tennessee, police cruiser.

On April 28, 1977, about 7:05 p. m., I observed as Special Employee Edward C. Long met John E. Hatfield at Scotties Restaurant in Caryville, Tennessee. Both men looked into Hatfield's vehicle and I observed as Long took a brown paper sack from Hatfield's vehicle. After Hatfield and Long separated, I met Special Employee Long on the I–75 interstate, south of the Caryville exit. Long turned over to me a Colt semi-automatic, .45 caliber pistol, serial number 705C8436, which he stated he had purchased from John Hatfield for $175.00. Long stated that he did not sign any form or paperwork in connection with the sale. Long stated that Hatfield said that when he could get guns without paperwork that he would sell without paperwork. On July 16, 1977, I observed as Special Employee Edward C. Long and Special Agent Willie A. Ingram of the Bureau of Alcohol, Tobacco and Firearms, met John Hatfield at about 3:55 p. m. at Scotties Restaurant in Caryville, Tennessee. I observed as Long bent over and looked into the police cruiser which Hatfield was driving. I met Special Agent Ingram and Long shortly after they separated from Hatfield at 4:00 p. m. Long and Special Agent Ingram turned over to me a Rossi, .38 caliber revolver, serial number D–342680, which Long said he purchased for Ingram from John Hatfield for $75.00. Special Agent Ingram and Long stated that Hatfield did not require either of them to fill out any form or paperwork in connection with the sale. Special Agent Ingram stated that he asked Hatfield if the gun could be traced and he (Hatfield) said, "No."

On September 20, 1977, I was present at 168 Garden Road, Norris, Tennessee, the residence of Edward C. Long, when Long conferred with John E. Hatfield by telephone. Hatfield stated that he had two firearms for sale which did not require any paperwork. Hatfield suggested that Long meet him at the Mobil Gasoline Station in Caryville, Tennessee, on the following evening at 7:30 p. m. for the sale.

2. *See* Tr. of Proceedings on Defendant's Motion to Suppress, Gov't App. at 27a–36a.

the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, *must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.* They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. \* \* \* Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. *Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.* \* \* \*

380 U.S. at 108–09, 85 S.Ct. at 746 (Emphasis added. Citations omitted).

This court has on a number of occasions applied the above principle and in each instance we have consistently held that great deference should be accorded a magistrate's determination of probable cause.[3]

We stated in *United States v. Giacalone,* 541 F.2d 508, 513–14 (6th Cir. 1976):

once a Magistrate has found probable cause and has issued a warrant, his judgment is conclusive unless arbitrarily exercised, since the purpose of the Fourth Amendment has been served by his review of the affidavit.

We further stated in *Giacalone* that:

When a court is faced with a situation wherein there is at issue the *quantum* of evidence necessary to be alleged to support a finding of probable cause, and when *the affidavit arguably shows circumstances which could support a determination that evidence of a federal crime will probably be found in the place to be searched,* the court should follow the practice expressed in *United States v. Lewis,* 392 F.2d 377, 379 (2d Cir.), cert. denied, 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968):

One of the best ways to foster increased use of warrants is to give law enforcement officials the assurance that when a warrant is obtained in a close case, its validity will be upheld.

541 F.2d at 516 (Emphasis added.)

The application of the above well settled principles leads us to reverse the district court. The affidavit in question, when read in a commonsense and non-hypertechnical fashion, does not lead one to conclude that the magistrate's finding of probable cause

---

**3.** *See, e. g., United States v. Barone,* 584 F.2d 118 (6th Cir. 1978), cert. denied, —— U.S. ——, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979); *United States v. Swihart,* 554 F.2d 264 (6th Cir. 1977); *United States v. Dudek,* 560 F.2d 1288 (6th Cir. 1977), cert. denied, 434 U.S. 1037, 98 S.Ct. 774, 54 L.Ed.2d 786 (1978); *United States v. Giacalone,* 541 F.2d 508 (6th Cir. 1976); *United States v. Rosenbarger,* 536 F.2d 715 (6th Cir. 1976),

cert. denied, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1977); *United States v. Sevier,* 539 F.2d 599 (6th Cir. 1976); *United States v. Hodge,* 539 F.2d 898 (6th Cir. 1976), cert. denied, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977); *United States v. Moore,* 452 F.2d 569 (6th Cir. 1971), cert. denied, 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972).

to search defendant's premises for illegal weapons was arbitrary.

The affidavit related the fact that the defendant was a properly licensed federal firearms dealer at the time of the request for the warrant. This license revealed the defendant's business location, the premises to be searched. The affidavit contained information that Hatfield had on two prior occasions sold firearms out of his police cruiser without compiling the required information. The affidavit further informed the magistrate that on September 20, 1977, less than twenty-four hours prior to the issuance of the warrant, Hatfield informed ATF Special Employee Long that "he had two firearms for sale which did not require paperwork."

It was not unreasonable for the magistrate to infer from the above facts that Hatfield *probably* maintained illegal firearms somewhere on his premises. The defendant disagrees with this interpretation of the facts and states a common sense reading of the affidavit would lead a reasonable person to conclude that Hatfield, by selling the firearms from his police cruiser, was making every effort to keep the firearms away from his business premises.

It may be that these alternative readings of the affidavit are equally reasonable, but it is neither our nor the district court's function as reviewing courts to substitute our interpretation of the facts in the affidavit for that of the magistrate. "In dealing with probable cause . . . as the very name implies, we deal with probabilities," *United States v. Hodge*, 539 F.2d 898, 903 (6th Cir. 1976), *quoting Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), and "deference is to be accorded an independent judicial officer's finding of probable cause, with doubtful cases governed largely by the preference which our legal system gives to warrants." *United States v. Jenkins*, 525 F.2d 819, 824 (6th Cir. 1975).

We therefore hold that the affidavit contains sufficient facts to indicate that the magistrate's finding of probable cause to search defendant's premises for illegal firearms was not arbitrary and the district court erred in holding to the contrary.

In light of our finding of probable cause, it is unnecessary to decide the remaining constitutional issue—whether a search warrant can be severed and the search conducted under the warrant considered as two searches, one supported and one not supported by probable cause. This issue raises important fourth amendment questions, the decision of which we leave to another day and another case.[4] *See Ashwander v. TVA*, 297 U.S. 288, 346–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J. concurring).

Accordingly, the order of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

---

4. Our research has disclosed only one case which has dealt with this issue. *See United States v. Burch*, 432 F.Supp. 961 (D.Del.1977).