**UNITED STATES of America,**
**Plaintiff-Appellant,**

**v.**

**Lee COOK and Jackie B. Kirk,**
**Defendants-Appellees.**

**No. 80–1917.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Sept. 30, 1981.

Rehearing and Rehearing En Banc
Denied Nov. 17, 1981.

James R. Gough, Daniel Tucker Kamin, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellant.

Charles S. Szekely, Jr., Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for Cook.

W. B. "Bennie" House, Jr., Houston, Tex., for Kirk.

Before REAVLEY, RANDALL and SAM D. JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

In this appeal by the Government from an order of a United States district judge suppressing evidence prior to a criminal trial, we must decide whether a search warrant that authorized the seizure of illegally reproduced videotapes from the defendants' place of business violated the Fourth Amendment. We also must decide whether so much of the warrant that did not con-

form to Fourth Amendment standards should have been severed from the remainder of the warrant and suppression limited solely to those items seized pursuant to the invalid portion of the warrant. The district judge held that the search warrant violated the Fourth Amendment and, without reaching the issue of severance, granted one defendant's motion for suppression of all of the evidence seized under the warrant. We agree with the district judge that the search warrant was impermissibly general, but we hold that under the circumstances the trial court should have severed the infirm portion of the warrant and suppressed only the evidence seized under that portion of the warrant. As modified, we affirm the order of the district court, 498 F.Supp. 1057.

### I.

The prosecution is for criminal infringement of copyright and related offenses. Defendants Lee Cook and Jackie B. Kirk are charged with illegally reproducing copyrighted motion pictures onto videotape cassettes and then renting those cassettes for profit. Federal officers conducted an investigation of the operations of the defendants for some time before going before a United States magistrate for a warrant to search their place of business, The Company of Actors Theater. Probable cause was shown to the magistrate by a nine page affidavit, which justified a belief that Jim Cook and Lee Cook had illegally obtained and reproduced copyrighted films, that they rented tapes of those movies and distributed them out of the premises to be searched, that Lee Cook had admitted that "many" of his films were illegal, that many videotape cassettes were stored on open shelves on three walls around or near the projection room, and that defendants' place of business contained equipment that could be used to reproduce films onto videotape. The affidavit states that it had attached to it a brochure and a list of the films available from defendants'

operation, but we do not find that attachment in the record. The Government's brief states that a catalogue of "pirated motion pictures" was presented with the warrant.

The warrant directed the seizure of the following described property:

Illegally obtained and reproduced copyrighted films of which there have been no first sales by the copyright owners, and recorded video tape cassettes on to which these illegally obtained and copyrighted films of which there have been no first sales have been electronically transferred and recorded, including but not limited to the motion pictures described in the affidavit,[1] recorded video tapes of those aforementioned films but not limited to them; electronic transfer and playback equipment capable of transferring film to video tape and video tape to video tape, and capable of playback and exhibition of those tapes, used in the production, reproduction, manufacture and distribution of recorded video tapes containing copyrighted motion pictures on which there have been no first sales by the copyright owners and which are violations of Title 17, U.S.Code, Section 104(a) and all records, books, contracts of sale, rental and/or lease of any copyrighted films and for video cassettes. The films, recorded video tapes containing those films, and instrumentalities are used and have been used to commit violations of Title 17, United States Code, Section 104(a).

The warrant was executed by six or seven federal officers who conducted a seven and one-half hour search and seized 1,317 items, listed in a 52 page inventory. Defendant Lee Cook moved to suppress "any and all evidence" obtained during the execution of the warrant. After a hearing, the district judge granted the motion. The Government then took this appeal. *See* 18 U.S.C. § 3731 (1976).

---

1. The affidavit that accompanied the warrant listed twelve copyrighted motion pictures that the United States had probable cause to believe had been criminally infringed by the defendants. The twelve motion pictures were: Jaws, The War Lord, Three Days of the Condor, Midnight Cowboy, White Lightning, Rocky, Network, Bonnie and Clyde, Rollerball, St. Ives, Jeremiah Johnson, and Star Wars.

## II.

The Fourth Amendment to the Constitution of the United States provides that search warrants may be issued only on probable cause "particularly describing the place to be searched, and the persons or things to be seized." A general order to explore and rummage through a person's belongings is not permitted. The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized. *Steele v. United States*, 267 U.S. 498, 503–04, 45 S.Ct. 414, 416–417, 69 L.Ed. 757 (1925); *United States v. Dresser*, 542 F.2d 737, 740 n.4 (8th Cir. 1976). Circumstances often make an exact description of the property impossible and in those cases the judicial officer issuing the warrant must weigh the practical necessities of law enforcement against the likelihood of a violation of the personal rights of the one whose premises and possessions are to be searched.

Assuming that probable cause has been shown, the warrant may be sufficient with only a generic description such as "United States currency." *United States v. Bright*, 630 F.2d 804, 811–12 (5th Cir. 1980). Search of a fur dealer's store was upheld under a warrant describing "fur coats" stolen from a truck and "books, records and other fruits and instrumentalities" of the crime. *United States v. Scharfman*, 448 F.2d 1352 (2d Cir. 1971), *cert. denied*, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972). Similarly, we upheld a warrant authorizing seizure of "gambling paraphernalia . . . records, sales receipts, customers' lists, shipping orders, supplies, machine equipment, machine tools and hand tools for the manufacture of gambling paraphernalia . . . ." *James v. United States*, 416 F.2d 467, 473 (5th Cir. 1969), *cert. denied*, 397 U.S. 907, 928, 90 S.Ct. 902, 938, 25 L.Ed.2d 87, 108 (1970). *See also United States v. Cortellesso*, 601 F.2d 28, 30 (1st Cir. 1979) ("stolen goods, wares and merchandise valued in excess of $5,000 which have travelled in interstate commerce, in particular men's suits, sports jackets, women's boots, leather coats"), *cert. denied*, 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980); *United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir. 1976) ("marijuana, paraphenrnalia [sic] and U.S. currency"); *United States v. Wilson*, 451 F.2d 209, 214 (5th Cir. 1971) ("paraphernalia for making coins"), *cert. denied*, 405 U.S. 1032, 92 S.Ct. 1298, 31 L.Ed.2d 490 (1972).

The use of a generic term or a general description in a warrant, however, is acceptable to the judicial officer issuing the warrant only when a more specific description of the things to be seized is unavailable. Thus, in *United States v. Cortellesso*, the First Circuit upheld a warrant issued to search for and seize stolen clothing when the "labels had been removed from the Pierre Cardin suits so that a more precise description would not have assisted the [searcher] and, that with respect to other stolen items, only a generic description was known." 601 F.2d at 32. Failure to employ the specificity available will invalidate a general description in a warrant. As we said in *United States v. Bright*, if the police had possessed a complete list of serial numbers of currency being sought, it would have been necessary to give them in the warrant description because "generic classifications in a warrant are acceptable only when a more precise description is not possible." 630 F.2d at 812. *See Montilla Records v. Morales*, 575 F.2d 324 (1st Cir. 1978); *United States v. Klein*, 565 F.2d 183 (1st Cir. 1977).

Under these standards, we hold that the search warrant was constitutionally flawed.[2] The warrant issued by the magistrate used a generic term when it authorized the seizure of "cassettes on to which . . . copyrighted films . . . have been electronically transferred and recorded." As issued, it supplied the searching agents with little

---

2. The additional degree of scrutiny afforded the particularity requirement of a warrant to search for and seize books, films, and other communications media is not involved here. The search warrant issued by the magistrate for the seizure of the illegally reproduced videotapes was directed not at the content of the tapes, but rather at their character. *Stanford v. Texas*, 379 U.S. 476, 485 n.16, 85 S.Ct. 506, 512 n.16, 13 L.Ed.2d 431 (1965).

guidance when it provided for the seizure of "illegally obtained films . . . *not limited to* the motion pictures described in the affidavit" (emphasis added).

■ It is clear that the magistrate either was not given or did not use available directions to specify tapes and films and to describe methods by which the items to be seized could be determined. The FBI agent who served as the affiant in the application for the warrant had experience with copyright offenses and knew that recent movies were likely to be protected by copyright and that pornographic material, also stored at The Company of Actors Theater, was not. The telling factor here, however, was the catalogue of "pirated motion pictures" on videotape that the special agent had obtained from The Company of Actors Theater. This catalogue provided a complete list of motion pictures currently available on videotape from the defendants. If a law enforcement officer has a list of the property on the premises, he can determine what is likely to be illegal or evidence of illegality, and the magistrate may easily direct seizure of that property only without unnecessarily interfering with the other property of the possessor. Because that course was not followed here, we agree with the district judge that the search warrant failed to describe with particularity the things to be seized.

## III.

■■ When the Government conducts a search pursuant to a warrant that does not particularly describe the things to be seized, the appropriate remedy is for the court to exclude from the evidence in a later criminal action the items improperly taken. By removing from the evidence the items that were not particularly described, the court fulfills three purposes. First, it erects a deterrent to illegal searches. Second, the court prohibits the Government from benefiting from its own wrong by using the illegally seized evidence to convict. Third, by removing illegally obtained evidence from the courtroom, the court precludes itself from serving as an accomplice in the violation of the Constitution. *See generally* 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.1(f) (1978).

Whether the court should suppress all of the evidence seized when a search warrant provides a constitutionally sufficient description of some, but not all, of the things to be seized has, according to our research, never been decided by this or any other United States court of appeals.[3] The leading decision is *Aday v. Superior Court*, 55 Cal.2d 789, 362 P.2d 47, 13 Cal.Rptr. 415 (1961). In *Aday*, a warrant issued authorizing the seizure of two particularly described books and myriad other generally described items. On appeal, the California Supreme Court held that only the books were particularly described in the warrant and lawfully seized. The court acknowledged that the warrant was flawed, but rather than suppress everything seized, the court chose to sever the defective portions of the warrant

---

**3.** Whether the court should suppress all of the seized evidence when a search warrant particularly describes some, but not all, of the items to be seized has been once argued before a United States court of appeals. In *In re Lafayette Academy, Inc.,* 462 F.Supp. 767 (D.R.I.1978), the district judge suppressed all of the items seized pursuant to a warrant after finding that only some of the items had been particularly described. On appeal, the First Circuit held that "the description of no item is free from fourth amendment difficulties" and affirmed without "reach[ing] the issue of severability." *In re Lafayette Academy,* 610 F.2d 1, 6 (1st Cir. 1979).

In *United States v. Hatfield,* 461 F.Supp. 57 (E.D.Tenn.1978), the district judge, in an analogous situation, found that the affidavit in support of the application for a search warrant was insufficient to demonstrate probable cause to search for illegal firearms but sufficient to establish probable cause to search for records of transactions. Nevertheless, the district judge suppressed both the records and the illegal firearms seized during the search. On appeal, the Sixth Circuit held that probable cause existed to search for the illegal firearms and did not decide "whether a search warrant can be severed and the search conducted under the warrant considered as two searches, one supported and one not supported by probable cause." *United States v. Hatfield,* 599 F.2d 759, 762 (6th Cir. 1979).

and suppress only those items that were not particularly described.

Although the warrant was defective . . . , it does not follow that it was invalid as a whole. Such a conclusion would mean that the seizure of certain articles, even though proper if viewed separately, must be condemned merely because the warrant was defective with respect to other articles. The invalid portions of the warrant are severable from the authorization relating to the named books, . . . . The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles.

*Id.* at 797, 362 P.2d at 52, 13 Cal.Rptr. at 420.

We agree with the reasoning of the Supreme Court of California and the majority of state courts that have considered this question[4] and hold that in the usual case the district judge should sever the infirm portion of the search warrant from so much of the warrant as passes constitutional muster. *See United States v. Giresi,* 488 F.Supp. 445, 459–60 (D.N.J.1980). Items that were not described with the requisite particularity in the warrant should be suppressed, but suppression of all of the fruits of the search is hardly consistent with the purposes underlying exclusion. Suppression of only the items improperly described prohibits the Government from profiting from its own wrong and removes the court from considering illegally obtained evidence. Moreover, suppression of only those items that were not particularly described serves as an effective deterrent to those in the Government who would be tempted to secure a warrant without the necessary description.[5] As the leading commentator has observed, "it would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and the magistrate erred in seeking and permitting a search for other items as well." 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.6(f) (1978).[6]

We hold that the district judge erred when she neglected to sever those portions of the warrant that did not particularly describe the things to be seized from the remainder of the search warrant. This is not a situation in which the entire warrant is defective. The affidavit of the spe-

---

**4.** The majority of state courts that have decided the issue have held in favor of severability. *See* 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 4.6(f) n.86 (1978 & Supp. 1981); *United States v. Giresi,* 488 F.Supp. 445, 459 n.17 (D.N.J.1980) (collecting cases). At least one United States district court, however, has specifically repudiated severability of a search warrant as enunciated by the Supreme Court of California. *See United States v. Burch,* 432 F.Supp. 961, 964 n.2 (D.Del.1977).

**5.** In what one court has characterized as a "somewhat analogous situation," *see United States v. Giresi,* 488 F.Supp. 445, 460 n.18 (D.N.J.1980), when a search proceeds beyond the scope of a search warrant and items are seized that are not described in the warrant, the proper remedy is for the court to order either the suppression or the return of the things seized. *Andresen v. Maryland,* 427 U.S. 463, 482 n.11, 96 S.Ct. 2737, 2749 n.11, 49 L.Ed.2d 627 (1976) ("to the extent such papers were not within the scope of the warrants or were otherwise improperly seized, the State was correct in returning them voluntarily and the trial judge was correct in suppressing others"); *United States v. Dunloy,* 584 F.2d 6, 11

n.4 (2d Cir. 1978) ("the remedy with respect to any items exceeding the scope of the warrant would not have been invalidation of the search but suppression of those items"). *See also United States v. Giresi,* 488 F.Supp. at 460 n.18.

**6.** Our review of the record in this appeal does not disclose a situation in which the warrant, when read with the affidavit, is essentially general in character but as to some tangential items meets the requirement of particularity. *See Aday v. Superior Court,* 55 Cal.2d 789, 362 P.2d 47, 52, 13 Cal.Rptr. 415, 420 (1961). Nor does this appeal present a case in which the description of a class of items to be seized is so vague that when read with the remainder of the warrant Fourth Amendment principles are offended. *See, e. g., In re Lafayette Academy, Inc.,* 462 F.Supp. 767, 771 (D.R.I.1978), *aff'd on other grounds,* 610 F.2d 1 (1st Cir. 1979). Moreover, neither the Government nor the appellees claim that the description of the films found in the affidavit was included by the Government as a pretext to support an otherwise unlawful search and seizure. *See People v. Hansen,* 38 N.Y.2d 17, 21, 339 N.E.2d 873, 875, 377 N.Y.S.2d 461, 465 (1975).

cial agent listed twelve motion pictures that the FBI had probable cause to believe had been illegally reproduced onto videotapes by the defendants and were stored at the place to be searched. The affidavit, which was referred to and which accompanied the warrant, supplied a particular description of those films and tapes. *See United States v. Haydel,* 649 F.2d 1152, 1156–1158 (5th Cir. 1981); *United States v. Womack,* 509 F.2d 368, 382 (D.C.Cir.1972). Therefore, because the warrant particularly described those items, the district judge should not have ordered their suppression.

 We agree, however, with the district judge in suppressing all of the other items seized under the authority of the warrant. As read with the affidavit, the search warrant provided a particular description of only twelve "[i]llegally obtained . . . films of which there have been no first sales by the copyright owners, and recorded video tape cassettes on to which these . . . films . . . have been electronically transferred and recorded." The remaining language in the warrant, which, in general terms, authorized the seizure of books, records, and instrumentalities involved in the crime of copyright infringement, was not limited by a particular description in the accompanying affidavit. Because this language refers to that portion of the warrant that impermissibly authorized a general seizure of films and videotapes, the district judge properly suppressed any items seized under it. *Andresen v. Maryland,* 427 U.S. 463, 480–82, 96 S.Ct. 2737, 2748–2749, 49 L.Ed.2d 627 (1976). Properly severed and read with the affidavit, the search warrant authorized only the seizure of the twelve films or tapes of films that the Government had probable cause to believe were involved in the crime of copyright infringement. Other items fell outside of the scope of the warrant and were improperly seized. *See Andresen v. Maryland,* 427 U.S. at 482 n.11, 96 S.Ct. at 2749 n.11.

## IV.

We therefore affirm the order of the trial court except for the films or tapes of films specifically named in the affidavit.

MODIFIED and AFFIRMED.