**UNITED STATES of America,**
**Plaintiff,**

v.

**Clarence Daniel FISK, Defendant.**

**No. 00–20044–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

March 27, 2003.

Robert A. Betts, Caro, MI, for Defendant.

Janet L. Parker, U.S. Attorneys Office, Bay City, MI, for U.S.

### *ORDER DENYING DEFENDANT'S MOTIONS TO QUASH SEARCH WARRANT AND SUPPRESS EVIDENCE*

LAWSON, District Judge.

This matter is before the Court on the defendant's motions to dismiss the superseding indictment ("indictment"), and to quash a search warrant and to suppress evidence obtained pursuant to the search warrant. The indictment charges the defendant with various counts of violating federal statutes prohibiting the receipt and possession of child pornography; the government also seeks to forfeit property in connection with this activity. The defendant contends that counts 1 and 2 of the indictment are insufficient because they charge offenses defined by a portion of a federal statute that has been declared unconstitutional, charging both receiving and possession of the same material in separate counts is either duplicitous or multiplicitous, the statute forming the basis of the charge in court 4 is overbroad and therefore unconstitutional, and the forfeiture count is defective because it does not allege that the defendant has an interest in the property to be forfeited and it relies on an unconstitutional statute. The defendant also argues that the search warrant is overbroad and violates the Fourth Amendment. The Court disagrees with all of the defendant's contentions and will deny all of the motions.

### I.

In 1999 and 2000, Mark Langenderfer, an agent with the United States Custom Service, along with other U.S. Customs agents, conducted an undercover investigation involving child pornography over the Internet and discovered a web site operated by Sergey Shibaev in Moscow, Russia that sold "hard core" and "soft core" child pornography. The pornography could be purchased by wiring $100 to Shibaev via Western Union. The United States Customs Service served a subpoena upon Western Union and obtained a detailed transaction report showing the names of individuals who were wiring money to Shibaev. The report showed that the defendant, Clarence Daniel Fisk of 504 Cass Avenue in Bay City, Michigan, had wired $100 to Shibaev on February 5, 1999.

Langenderfer conveyed this information to Jane F. Smith, a child protective ser-

vices worker working for the Michigan Department of Social Services in Bay County, Michigan. Ms. Smith learned that the defendant previously had been convicted of second-degree criminal sexual conduct arising from an incident involving a six-year-old boy. Together with agent Langenderfer, Smith prepared an affidavit in support of a request for a search warrant to search the defendant's home. In her affidavit, Smith stated that she has experience and training in criminal deviant sexual behavior and has been qualified as a child sexual abuse expert. Ms. Smith included a lengthy list of property in her affidavit that she believed constituted evidence of criminal conduct, including "literature or images depicting naked men and naked women; literature or images depicting naked or clothed children; ... whips, or other items used for discipline; handcuffs, leg restraints, or other fetters, ... computers, storage disks, ... and visual depictions of children engaged in sexually explicit conduct via [*sic*] videos, books, magazines and photographs." *See* Aff. of Jane Smith at 1, ¶ 1. Ms. Smith also averred that, based upon her experience and training, individuals who are sexually attracted to children often seek out and collect sexually explicit materials involving children, including material on a computer. Mr. Langenderfer informed Ms. Smith that the defendant had transferred $100 via Western Union to Shibaev for the alleged purpose of purchasing child pornography. *See id.* at 4. Ms. Smith and Mr. Langenderfer presented their search warrant request to a state magistrate to obtain authority to seize the items which Smith had listed as "evidence of criminal conduct," located at the residence of the defendant. Magistrate P.L. Boes of the 74th Judicial District in Bay County, Michigan, signed the search warrant on February 3, 2000.

On that same date, police officers executed a search warrant at the defendant's residence and found alleged child pornography stored on a computer there.

The grand jury returned a four-count indictment against the defendant, and later a four-count superseding indictment on May 8, 2002. The superseding indictment charges in count 1:

From approximately February 26, 1998, the precise time unknown, until on or about February 3, 2000, in the Eastern District of Michigan, Northern Division, Clarence Daniel Fisk, defendant herein, did knowingly receive material that contained child pornography as defined in 18 U.S.C. § 2256(8), that is depictions of a minor engaging in sexually explicit conduct, that had been transported in interstate and foreign commerce by computer, in violation of Title 18, United States Code, section 2252A(a)(2)(B).

The grand jury further alleges that Clarence Daniel Fisk was convicted on October 22, 1984 of a crime relating to abusive sexual conduct involving a minor in Circuit Court in Bay County, Michigan.

Count 2 of the Indictment states:

From approximately February 26, 1998, the precise time unknown, until on or about February 3, 2000, in the Eastern District of Michigan, Northern Division, Clarence Daniel Fisk, defendant herein, did knowingly possess material that contained an image or images of child pornography as defined in 18 U.S.C. § 2256(8), that is depictions of a minor engaging in sexually explicit conduct, that had been transported in interstate and foreign commerce by computer, in violation of Title 18, United States Code, section 2252A(a)(5)(B).

The grand jury further alleges that Clarence Daniel Fisk was convicted on October 22, 1984 of a crime relating to abusive sexual conduct involving a minor

in Circuit Court in Bay County, Michigan.

Count 3 of the Indictment states:

The allegations contained in Counts 1 and 2 are realleged and are incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 2253(a)(3).

As a result of the enumerated violations of 18 U.S.C. § 2252A, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 2253(a)(3) "any property, real or personal, used or intended to be used to commit or to promote the commission of such offense," including

1) All computer and computer-related equipment seized on or before February 3, 2000, and

2) real property located at 504 Cass Street, Bay City, Michigan, tax identification number 9–16–04–101–002.

If the property described above as being subject to forfeiture, as a result of the act or omission of defendant

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot subdivide without difficulty;

it is the intent of the United States to seek to forfeit any other property of the defendant up to the value of the property listed above.

All in violation of Title 18, United States Code, section 2252A.

Count 4 of the Indictment states:

From approximately February 26, 1998, the precise time unknown, until on or about February 3, 2000, in the East-ern District of Michigan, Northern Division, Clarence Daniel Fisk, defendant herein, did knowingly take and receive from an interactive computer service, that is a service or system that provides access to the Internet, a matter or thing, the carriage and importation of which is made unlawful because the matter or thing contained obscene, lewd and lascivious picture, motion-picture film, and print matter, and other matter of indecent character, in violation of Title 18, United States Code, section 1462.

First Superseding Indictment, May 8, 2002.

The defendant has pleaded not guilty to the charges, and advances the challenges outlined above.

## II.

### A.

■ The defendant first contends that counts 1 and 2 of the indictment do not contain an adequate statement of the offenses, or a precise statutory reference, as required by Federal Rule Criminal Procedure 7(c), and therefore may charge offenses under a portion of a statute, 18 U.S.C. § 2256(8)(B) and (D), that has been declared unconstitutional.

■ "An indictment adequately charges an offense if it (1) includes the elements of the offense intended to be charged, (2) notifies the defendant of 'what he must be prepared to meet,' and (3) allows the defendant to invoke a former conviction or acquittal in the event of a subsequent prosecution." *United States v. Cor–Bon Custom Bullet Co.*, 287 F.3d 576, 579 (6th Cir.2002) (citing *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). Further, the focus of the inquiry is on the words of the indictment themselves; "courts evaluating motions to dismiss do not evaluate the evi-

dence upon which the indictment is based." *United States v. Landham,* 251 F.3d 1072, 1080 (6th Cir.2001) (citing *Costello v. United States,* 350 U.S. 359, 362–63, 76 S.Ct. 406, 100 L.Ed. 397 (1956)).

Count 1 of the indictment in this case charges that the defendant "knowingly receive[d] material that contained child pornography as defined in 18 U.S.C. § 2256(8), that is depictions of a minor engaging in sexually explicit conduct," through commerce in violation of 18 U.S.C. § 2252A(a)(2)(B). Using similar language, count 2 charges that the defendant knowingly possessed the same child pornography. These statutory citations refer to the Child Pornography Prevention Act of 1996 (CPPA), a portion of which the Supreme Court declared unconstitutional in *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). That decision, however, does not undermine the validity of the indictment in this case.

In *Free Speech Coalition,* the Court considered a First Amendment overbreadth challenge to the definition of "child pornography" contained in 18 U.S.C. § 2286(8). The Court held that subparagraph (B) of that section, which prohibits a visual depiction that "appears to be of a minor engaging in sexually explicit conduct," and subparagraph (D), which proscribes visual depictions that are promoted in such a way that "conveys the impression that the material" contains child pornography, are unconstitutional. The Court did not pass on the constitutionality of subparagraphs (A) or (C), which prohibit productions actually involving a minor engaged in, or modified to appear to be engaged in, sexually explicit conduct. *Free Speech Coalition,* 535 U.S. at ——, 122 S.Ct. at 1405–06.

■ The Court reasoned that the First Amendment does not protect speech that is defamatory, inciting, obscene or is pornography depicting real children. *Id.* at

——, 122 S.Ct. at 1399. However, unless the pornography involves the depiction of actual minors, as prohibited by *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), it cannot be prohibited unless it is also "obscene" within the meaning of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). To be obscene under *Miller,* the government must establish that the material taken as a whole appeals to prurient interests, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. *Miller,* 413 U.S. at 24, 93 S.Ct. 2607. The challenged portions of the CPPA do not prohibit obscenity because they "lack[ ] the required link between [the statute's] prohibitions and the affront to community standards" under the *Miller* definition. *Free Speech Coalition,* 535 U.S. at ——, 122 S.Ct. at 1401. The provision that prohibits material that "appears to" show minors does not fall outside First Amendment protection under the *Ferber* exception because it includes more than simply the depiction of actual minors. · *Id.* at ——, 122 S.Ct. at 1397–98. The Court concluded that the challenged sections of the statute "cover[ ] materials beyond the categories recognized in *Miller* and *Ferber* " and "abridge[ ] the freedom to engage in a substantial amount of lawful speech." *Id.* at ——, 122 S.Ct. at 1405.

The indictment in this case does not specify the subparagraph of Section· 2256(8) that defines the "child pornography" in this case. However, the indictment does state that the defendant violated Section 2252A(a)(2)(B) by receiving and possessing material consisting of "depictions of a minor engaging in sexually explicit conduct." In other words, the material referenced in the indictment is alleged to be pornography produced with real children, which 18 U.S.C. 2256(8)(A) prohibits, and which is not protected

speech. *See id.* at ——, 122 S.Ct. at 1397; *Ferber,* 458 U.S. at 759, 102 S.Ct. 3348. The indictment, therefore, does not allege conduct subject to First Amendment protection, as the Supreme Court described it in *Free Speech Coalition.* The indictment satisfies the requirements of Federal Rule Criminal Procedure 7(c) and the notice provision of the Sixth Amendment. The defendant's motion to dismiss the indictment on that ground will be denied.

### B.

■ The defendant also insists that the indictment is infirm because charging him with both receiving and possessing the same child pornography is multiplicitous, and since "child pornography" is defined in several ways by Section 2256(8), counts 1 and 2 are also duplicitous.

■ "Duplicitous indictments implicate the protections of the Sixth Amendment guarantee of jury unanimity." *United States v. Hood,* 210 F.3d 660, 662 (6th Cir.2000). "An indictment is duplicitous if 'it joins in a single count two or more distinct and separate offenses.'" *Ibid.* (quoting *United States v. Robinson,* 651 F.2d 1188, 1194 (6th Cir.1981)). "The vice of duplicity is that a jury may find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense." *Robinson,* 651 F.2d at 1194. "By collapsing separate offenses into a single count, duplicitous indictments thereby prevent the jury from convicting on one offense and acquitting on another." *Hood,* 210 F.3d at 663 (citations omitted).

In this case, the defendant's reasoning that duplicity results from the multiple definitions of "child pornography" contained in the statute is undermined by the language of the indictment itself. From among those definitions, the grand jury charged that the "child pornography" in this case consisted of material containing "depictions of a minor engaging in sexually explicit conduct." This description comports only with the subparagraph of the statute defining "child pornography," which is 18 U.S.C. § 2256(8)(A). Counts 1 and 2 each contain only one offense, and they are not duplicitous.

■ "An indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Schaffner,* 715 F.2d 1099, 1102 (6th Cir.1983) (citing *Robinson,* 651 F.2d at 1194). "A multiplicitous indictment raises the specter of multiple punishment for a single offense, and can prejudice the jury by suggesting that more than one crime was committed." *United States v. Gullett,* 713 F.2d 1203, 1211–12 (6th Cir.1983). However, "[a] defendant may be charged with multiple offenses based on the same underlying conduct as long as each offense requires proof of an element not required by the other." *United States v. Vartanian,* 245 F.3d 609, 616 (6th Cir.2001) (citing *United States v. Kelly,* 204 F.3d 652, 656 (6th Cir.)), *cert. denied,* 530 U.S. 1268, 120 S.Ct. 2732, 147 L.Ed.2d 994 (2000).

■ The rule against multiplicity is a pleading rule, "the violation of which is not fatal to an indictment." *Robinson,* 651 F.2d at 1194. If the government violates the rule, the defendant's remedy is to move to require the government to "elect either count or the charge within the count upon which it will rely." *Ibid.* A multiplicitous indictment is also remediable by the "court's instruction to the jury particularizing the distinct offense charged in each count in the indictment." *Ibid.*

■ The government may seek an indictment against a defendant for violations of receipt and possession of a prohibited item where a single act establishes the receipt and possession. *Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668,

84 L.Ed.2d 740 (1985). The defendant, however, may not suffer two convictions or sentences on that indictment. *Ibid.*

> If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses.

*Ibid.*

■■■ The defendant's motion alleging multiplicity is premature. The government is entitled to proceed to trial on the indictment, but if convictions are returned on both counts 1 and 2, the government will be required to elect between the counts prior to sentencing. *See United States v. Kuhn,* 165 F.Supp.2d 639 (E.D.Mich.2001).

### C.

■■■ The defendant next argues that 18 U.S.C. § 1462, the statute the defendant is charged with violating in count 4 of the indictment, is overbroad in its attempt to prohibit obscenity because it lacks the required link between its prohibitions and the affront to community standards prescribed by the obscenity definition. That statute provides:

> Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier or interactive computer service (as defined in section 230(e)(2) of the Communications Act of 1934), for carriage in interstate or foreign commerce-
>
> (a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or
>
> (b) any obscene, lewd, lascivious, or filthy phonograph recording, electrical transcription, or other article or thing capable of producing sound; or
>
> (c) any drug, medicine, article, or thing designed, adapted, or intended for producing abortion, or for any indecent or immoral use; or any written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, how, or of whom, or by what means any of such mentioned articles, matters, or things may be obtained or made; or
>
> Whoever knowingly takes or receives, from such express company or other common carrier or interactive computer service (as defined in section 230(e)(2) of the Communications Act of 1934) any matter or thing the carriage or importation of which is herein made unlawful-
>
> Shall be fined under this title or imprisoned not more than five years, or both, for the first such offense and shall be fined under this title or imprisoned not more than ten years, or both, for each such offense thereafter.

28 U.S.C. § 1462.

■■■ "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Connection Distributing Co. v. Reno,* 154 F.3d 281, 292 (6th Cir.1998) ("A statute is overbroad when it includes within its prohibitions activities that are constitutionally protected."). If the statute does not, then the overbreadth challenge must fail. *Flipside,* 455 U.S. at 494, 102 S.Ct. 1186. "The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the chal-

lenge only if the enactment is impermissibly vague in all of its applications." *Id.* at 494–95, 102 S.Ct. 1186.

> The constitutional prohibition against vague laws satisfies two basic concerns. First, it provides 'fair warning' so as to safeguard the innocent and, second, it avoids arbitrary applications of the law by insisting upon explicit standards regulating conduct. To these ends, due process requires that government regulations and statutes provide adequate warning as to what they command or forbid such that persons of common intelligence will not have to guess as to their meaning and may act accordingly.

*Fleming v. United States Dept. of Agriculture,* 713 F.2d 179, 184 (6th Cir.1983) (citations omitted).

 "A penal statute must define the offense with sufficient definiteness to enable ordinary people to understand what conduct is prohibited and must do so in a manner that does not encourage discriminatory enforcement. Except where First Amendment rights are involved, vagueness challenges must be evaluated in the light of the facts of the case at hand." *United States v. Hofstatter,* 8 F.3d 316, 321 (6th Cir.1993) (citations omitted); *see Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

Count 4 of the indictment in this case charges the defendant with taking obscene material off the internet. In *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973), the Supreme Court rejected a First Amendment overbreadth challenge to this statute in a case decided the same day as *Miller v. California.* It is well-established that the government must prove the elements outlined in *Miller* in order to establish a crime involving "obscene" material. *See Turoso v. Cleveland Municipal Ct.,* 674 F.2d 486, 493 (6th Cir. 1982). The indictment, however, need not charge, nor must the statute contain, the three-pronged test for obscenity ordained by the Supreme Court in *Miller. See Smith v. United States,* 505 F.2d 824, 827–28 (6th Cir.1974). The statutory use of the term "obscene" effectively imports that test into the indictment, and the jury will be so instructed. Consequently, the defendant may be convicted of count 4 only if the government proves beyond a reasonable doubt that the materials he "did knowingly take and receive from an interactive computer service" were "obscene" within the meaning of the controlling decisional authority. The defendant has not established, therefore, that 18 U.S. § 1462 is overbroad.

### D.

 Lastly, with respect to the sufficiency of the indictment, the defendant argues that the forfeiture count, count 3, is defective because it does not allege that the defendant has an interest in the property that is subject to forfeiture as required by Fed.R.Crim.P. 7(c)(2). The defendant also challenges 18 U.S.C. § 2253(a)(3), the forfeiture statute, as overbroad and vague because the statute allows forfeiture of real and/or personal property used to commit an offense "involving a visual depiction." The defendant reasons that "visual depiction" refers to the portion of the CPPA that the Supreme Court declared unconstitutional.

The latter argument may be immediately dispatched. "Visual depiction" is included in the definition of child pornography left intact by the Supreme Court in *Free Speech Coalition.* The property listed in the indictment in this case is subject to forfeiture only if it was "used or intended to be used to commit or promote the commission" of the offense in count 1 or 2 of the indictment, which specifies visual depictions of real minors, as explained earlier.

■ As to the former argument, Federal Rule Criminal Procedure 7(c)(2) provides that "no judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information provides notice that the defendant has an interest in the property that is subject to forfeiture in accordance with the applicable statute." The applicable statute is 18 U.S.C. § 2253(a)(3), which allows forfeiture of personal and real property only when the defendant has an "interest" in the property.

The defendant has not directed the Court to any case that holds that a forfeiture count in an indictment must be dismissed because it fails to specify the nature or extent of the defendant's interest in the property subject to forfeiture. Rather, a "[b]arebones pleading," such as we have in this case, suffices as long as defendant is put on notice that the government seeks forfeiture of particular property. *United States v. Cauble,* 706 F.2d 1322, 1347 (5th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). *See also United States v. Possick,* 849 F.2d 332, 340–41 (8th Cir.1988) (claim that indictment and special verdict form were defective because they did not specify defendant's interest in property that was allegedly jointly owned by wife fails as indictment clearly identified property); *United States v. Boffa,* 688 F.2d 919, 939 (3d Cir.1982) (by alleging that all of appellants' interest in enumerated property was subject to forfeiture, the indictment alleged the "extent of the interest or property subject to forfeiture"), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983); *United States v. Grammatikos,* 633 F.2d 1013, 1024 (2d Cir.1980) (principal objective of Rule 7(c)(2) is met if person facing charges is given notice that forfeiture will be sought).

In this case, count 3 of the indictment provides adequate notice that the government seeks to forfeit any interest the defendant has in the property described therein.

## III.

The defendant assails the search warrant in this case alleging that it is overbroad, in the sense that there was an insufficient showing of probable cause to seize many of the items authorized by the state magistrate. He concedes that there was probable cause to seize the Russian website material, but he points to an extensive list of items subject to seizure for which there is no probable cause, and contends that the warrant is invalid because of the inclusion of these items.

In paragraph one of Jane Smith's affidavit, she describes several sexual devices, depictions and writings, and contends that these items "constitute[ ] evidence of criminal conduct." Aff. of Jane Smith at 1, ¶ 1. According to the Supreme Court's decision in *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), it is not a crime to possess these materials for personal use or consumption, even if some of them fall within the definition of "obscenity." *See id.* at 568, 89 S.Ct. 1243.

■ Items that may be seized pursuant to a search warrant are limited to contraband, fruits of a crime, instrumentalities of a crime, and evidence of criminal conduct. *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 306–07, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) ("The requirements of the Fourth Amendment can secure the same protection of privacy whether the search is for 'mere evidence' or for fruits, instrumentalities or contraband."). "[T]he government may not seize evidence simply for the purpose of proving crime;" rather, there must be a nexus between the item to be seized and criminal behavior. *Id.* at 307, 87 S.Ct. 1642. Where the search is for fruits, instrumentalities or

contraband, the nexus is automatically provided. *Ibid.* In the case of "mere evidence," however, "probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction" and the court should also consider the purposes of the police in searching for "mere evidence." *Ibid.* After *Warden,* the Federal Rules of Criminal Procedure were modified to authorize the issuance of a warrant to search for items of solely evidential value. Fed. R.Crim.P. 41(b). *See also* 18 U.S.C. § 3103a(a) (a warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense). Neither the statute nor the rule attenuates the requirement of the nexus described by the *Warden* court. *See also United States v. Alloway,* 397 F.2d 105, 110 (6th Cir. 1968) (holding that "an item which can be considered a means or instrumentality of crime may be seized even though such item is not described in the warrant under which the search is being conducted."); *Clarke v. Neil,* 427 F.2d 1322, 1324 (6th Cir.1970) (holding that to uphold the validity of a search and seizure involving mere evidence requires finding the search was lawful and that police had requisite probable cause to justify search).

There is no nexus in this case between the defendant's alleged criminal conduct and most of the items listed in the search warrant, particularly those items which may be lawfully possessed by an individual for non-commercial purposes. However, the affidavit contains averments that the defendant had had prior unlawful sexual involvement with a minor, and that he had wired money to a Russian purveyor to purchase child pornography, and that this pornography was sold over the internet. Accordingly, the search warrant properly authorizes the seizure of "computer equipment, ... storage disks of computerized materials, visual depictions of children engaged in sexually explicit conduct via vid-

eos, books, magazines and photographs [and] documents related to the transmission and reception of electronic media ...." Search Warrant at 2.

■ Although the defendant may have had a right to possess these materials under *Stanley,* the Supreme Court in *Orito* drew a distinction between *possession* of such materials and *receipt* of such items, since the latter activity implicates commerce and is subject to Congressional regulation. *See Orito,* 413 U.S. at 143–44, 93 S.Ct. 2674. Consequently, the presence of child pornography which allegedly arrived in the defendant's residence through the channels of commerce constitutes evidence of a crime.

■ The Court believes that probable cause existed to support the issuance of a warrant to search and seize pornography stored on a computer located at the defendant's residence. "The test for probable cause is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Miller,* 314 F.3d 265, 268 (6th Cir.2002) (quoting *United States v. Murphy,* 241 F.3d 447, 457 (6th Cir.2001)); *United States v. Smith,* 182 F.3d 473, 477 (6th Cir.1999) (Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity"). When determining whether probable cause exists, the judicial officer issuing the search warrant should look at the totality of the circumstances and "make a practical, common sense decision ... given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Id.* (quoting *Murphy,* 241 F.3d at 457); *see Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Here, there was clear evidence that the defendant may have been trafficking in

child pornography. The images themselves are fruits of the crime, and the electronic or paper trail documenting the purchase is evidence for which a nexus was properly established. That portion of the search warrant which authorized the seizure of those items complied with the requirements of the Fourth Amendment.

■■■■ The defendant claims that because a portion of the search warrant is invalid, the entire warrant is overbroad and all of the evidence seized pursuant thereto must be suppressed. However, where a portion of the warrant is invalid because it is overbroad or lacks probable cause, that portion will not invalidate the entire warrant; rather, the court may sever and invalidate only those portions containing the overbroad language, or the sections that are not based on probable cause, and allow the items seized under the proper portions of the warrant to stand as evidence. *Sovereign News Co. v. United States,* 690 F.2d 569, 576 (6th Cir.1982). A court arrived at the same conclusion in *United States v. Fitzgerald,* 724 F.2d 633 (8th Cir.1983), where it was held that excluding all evidence obtained pursuant to a search warrant merely because the warrant was in one respect deficient would not advance the purposes justifying the exclusionary rule. *Id.* at 636–37 ("Accordingly, we follow the approach which the First, Third, Fifth, Sixth, and Ninth Circuits, and several states, have adopted, and hold that, absent a showing of pretext or bad faith on the part of the police or the prosecution, the invalidity of part of a search warrant does not require the suppression of all the evidence seized during its execution. More precisely, we hold that the infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant (assuming such evidence could not otherwise have been seized, as for example on plain-view grounds during the execution of the valid portions of the warrant), but does not re-

quire the suppression of anything described in the valid portions of the warrant (or lawfully seized—on plain view grounds, for example—during their execution). This approach, we think, complies with the requirements of the fourth amendment."); *see also United States v. Riggs,* 690 F.2d 298 (1st Cir.1982) (adopting severance); *United States v. Christine,* 687 F.2d 749 (3d Cir.1982) (adopting severance); *United States v. Cook, supra,* 657 F.2d 730, 734–36 (5th Cir.1981) (adopting severance).

Neither party has informed the court of the extent of the items seized in this case, with the exception of the allegations in the defendant's motion that child pornography was seized from his computer. It appears, therefore, that no items were seized under the authority of the invalidated portion of the warrant. The Court finds that severance of the invalid portion is called for here. The items seized fell within the portion of the search warrant that was fully supported by probable cause.

### IV.

The Court finds that the indictment does not suffer presently from the defects alleged by the defendant. The seizure of the items described in the defendant's motion did not violate the Fourth Amendment.

Accordingly, it is **ORDERED** that the defendant's motions to dismiss the indictment [dkts # 33, 34, 35, 36, 37] are **DENIED.**

It is further **ORDERED** that the defendant's motion to quash search warrant and suppress evidence [dkt # 52] is **DENIED.**